# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| KAMAN AEROSPACE CORP., | ) | 3:22-CV-1445 (SVN) |
| *Plaintiff,* | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CENTRAL COPTERS, INC., | ) | |
| *Defendant*. | ) | August 28, 2023 |

## RULING AND ORDER ON CENTRAL COPTERS' MOTION TO DISMISS

Sarala V. Nagala, United States District Judge.

Plaintiff Kaman Aerospace Corp. ("Kaman"), a manufacturer of helicopters, parts, and equipment, brought this breach of contract action against a customer, Defendant Central Copters, Inc. ("Central Copters"), contending that Central Copters has not paid for parts purchased from Kaman. Central Copters has now moved to dismiss the present action or, in the alternative, transfer it to the District of Montana so it can proceed along with a related pending action. Specifically, Central Copters contends that this Court lacks personal jurisdiction over it and that transfer would be in the interest of justice. In response, Kaman contends that its breach of contract claim is subject to a forum selection clause incorporated into the parties' transactions, through which Central Copters effectively consented to personal jurisdiction in Connecticut. For the following reasons, the Court agrees with Kaman, and Central Copters' motion to dismiss or transfer is thus DENIED.

## I.    FACTUAL BACKGROUND[1]

Kaman is a corporation organized under Delaware law with its principal place of business in Bloomfield, Connecticut. Compl., ECF No. 1, ¶ 4; Perreault Decl., ECF No. 20-2, ¶ 7. Kaman

---

[1] In assessing a motion to dismiss for lack of personal jurisdiction brought under Federal Rule 12(b)(2), the Court may consider materials outside the pleadings, including affidavits and other written materials. *See Seetransport Wiking Trader Schiffarhtsgesellschaft MBH & Co., Kommanditgesellschaft v. Navimpex Centrala Navala*, 989 F.2d 572, 580 (2d Cir. 1993). The allegations of the complaint are taken as true to the extent that they are uncontroverted by the defendant's affidavits. *Id.*; *see also MacDermid, Inc. v. Deiter*, 702 F.3d 725, 727 (2d Cir. 2012).

manufactures and sells the component parts and equipment for the K-MAX K-1200 model helicopter. Compl. ¶ 6. Central Copters is a corporation organized under Montana law with its principal place of business in Gallatin County, Montana. *Id.* ¶ 5; Duffy Decl., ECF No. 16-2, ¶ 3. Central Copters "utilizes a fleet of helicopters to provide services such as aerial firefighting, aerial surveying, and search and rescue missions throughout the western part of the United States." Duffy Decl. ¶ 4. Prior to the relevant events, Central Copters purchased helicopters, parts, and equipment from Kaman. *See id.* ¶ 5; Perreault Decl. ¶¶ 8, 12, 16.

According to Central Copters, its representatives met with Kaman's representatives in California in 2019, to discuss Central Copters' need to purchase various parts for a K-MAX helicopter. Duffy Decl. ¶ 14. Kaman communicated that it did not have those parts ready to ship at that time, and the parties discussed the timing of Central Copters' need for the parts in subsequent phone calls. *Id.* Then, in August of 2020, a pilot employed by Central Copters was flying a K-MAX helicopter to fight a fire in Oregon when he was killed in a helicopter accident. *Id.* ¶ 6.

In the spring of 2021, Kaman informed Central Copters that it had the parts Central Copters requested in 2019 available to ship from Connecticut to Montana. *Id.* ¶ 15. Between the spring and summer of 2021, Central Copters drafted and submitted purchase orders for the parts, totaling more than $500,000, and Kaman began to ship the parts in June of 2021. Compl. ¶ 8; Perreault Decl. ¶¶ 18–19; Duffy Decl. ¶ 15.

Central Copters contends that, in August of 2021, Central Copters "took all of its K-Max helicopters out of service" because of various defects discovered following the death of a Central Copters pilot in 2020. Duffy Decl. ¶ 20. Central Copters further contends that, because it grounded the fleet, it did not require the parts shipped by Kaman in the summer of 2021, and it then attempted

to return them.  *Id.*  Kaman represents that Central Copters contacted it around this time asking to return certain parts, and that Kaman authorized the return of all parts that had been delivered within thirty days of the request, per Kaman's policy that returns be requested within thirty days of delivery.  Perreault Decl. ¶¶ 24, 26.  Specifically, Kaman represents that it authorized the return of $122,237.00 worth of parts, but that Central Copters never actually shipped those parts back.  *Id.* ¶ 27.  Nor has Central Copters paid its outstanding balance of $520,284.90.  Compl. ¶¶ 12–13.

## II.     PROCEDURAL HISTORY

In August of 2021, around the same time Central Copters grounded its fleet of K-MAX helicopters, Central Copters and the estate of the deceased pilot (represented by the pilot's father, who is the President of Central Copters) initiated an action for product liability and wrongful death against Kaman in Montana state court, and the action was subsequently removed to the U.S. District Court for the District of Montana.  Duffy Decl. ¶ 8; *Duffy v. Kaman Aerospace Corp.*, 590 F. Supp. 3d 1317, 1322 (D. Mont. 2022).  Kaman moved to dismiss that action for lack of personal jurisdiction or to, in the alternative, transfer venue to the District of Connecticut pursuant to forum selection clauses contained in various documents underlying the parties' transactions.  *Duffy*, 590 F. Supp. 3d at 1328.  The district court denied the motion in its entirety, finding that it had personal jurisdiction over Kaman, and that the forum selection clauses did not bind the estate of the deceased pilot and did not govern Central Copters' claims in that suit.  *Id.* at 1329–30.  Kaman then filed an answer to the complaint raising various affirmative defenses and counterclaims of contribution, none of which addressed Central Copters' outstanding balance.  *See generally* Jensen Decl., ECF No. 16-3, Ex. 2.  That case has proceeded to discovery.

Meanwhile, in November of 2022, Kaman initiated the present two-count action for breach of contract and unjust enrichment under Connecticut state law, invoking this Court's diversity

jurisdiction.  Compl. ¶¶ 1, 14–23.  Central Copters then filed the present motion, seeking dismissal of the complaint for lack of personal jurisdiction and improper venue pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(3), or, alternatively, seeking transfer of venue to the District of Montana pursuant to 28 U.S.C. §§ 1404(a) or 1406(a).

### III.    PERSONAL JURISDICTION

#### A.  Federal Rule of Civil Procedure 12(b)(2)

Federal Rule of Civil Procedure 12(b)(2) permits a defendant to raise lack of personal jurisdiction as a defense by motion before a responsive pleading.  The plaintiff bears the burden of establishing personal jurisdiction over the defendant.  *MacDermid, Inc.*, 702 F.3d at 728.  The showing a plaintiff must make "varies depending on the procedural posture of the litigation." *Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 84 (2d Cir. 2013).  While a plaintiff bears the "ultimate burden" of establishing jurisdiction over a defendant by a preponderance of the evidence, until an evidentiary hearing is held, the plaintiff "need make only a *prima facie* showing by its pleadings and affidavits that jurisdiction exists."  *CutCo Indus., Inc. v. Naughton*, 806 F.2d 361, 365 (2d Cir. 1986).  This *prima facie* showing requires "an averment of facts that, if credited by the ultimate trier of fact, would suffice to establish jurisdiction over the defendant."  *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 59 (2d Cir. 2012).  Here, neither party has requested, and the Court has not held, an evidentiary hearing.  Thus, Kaman is required to make only a *prima facie* showing that this Court possesses personal jurisdiction over Central Copters.

The Court must construe any pleadings, affidavits, and other evidence in the light most favorable to Kaman, and all factual disputes must be resolved in its favor.  *Seetransport Wiking*

*Trader Schiffahrtsgesellschaft MBH & Co., Kommanditgesellschaft*, 989 F.2d at 580; *CutCo Indus., Inc.*, 806 F.2d at 365.

"Personal jurisdiction over a defendant in a diversity action is determined by the law of the forum in which the court sits." *CutCo Indus., Inc.*, 806 F.2d at 365.  In moving to dismiss the complaint, Central Copters contends that Connecticut's long-arm statute does not support the Court's exercise of personal jurisdiction over it, and that, even if it did, such exercise of personal jurisdiction would violate the Fourteenth Amendment's Due Process Clause. *See Samelko v. Kingstone Ins. Co.*, 329 Conn. 249, 256 (2018); *Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 163–64 (2d Cir. 2010).  In response, Kaman contends that Central Copters consented to personal jurisdiction in Connecticut through a forum selection clause Kaman claims was incorporated into purchase orders Central Copters submitted to Kaman.  The Court considers this last issue first, as it is dispositive.

### B.  Forum Selection Clause

#### 1.  Legal Standard

"Parties can consent to personal jurisdiction through forum-selection clauses in contractual agreements." *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 103 (2d Cir. 2006) (citing *Nat'l Equip. Rental, Ltd. v. Szukhent*, 375 U.S. 311, 315–16 (1964)).  *See also Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 n.14 (1985).  To determine the enforceability of a forum selection clause for the purpose of personal jurisdiction, a court proceeds through a four-step analysis. *Martinez v. Bloomberg LP*, 740 F.3d 211, 217 (2d Cir. 2014); *Phillips v. Audio Active Ltd.*, 494 F.3d 378, 383 (2d Cir. 2007).  "The first inquiry is whether the clause was reasonably communicated to the party resisting enforcement." *Phillips*, 494 F.3d at 383 (citing *Gottdiener*, 462 F.3d at 103).  At the second step, the court must "classify the clause as mandatory or permissive, i.e., to decide whether

the parties are *required* to bring any dispute to the designated forum or simply *permitted* to do so." *Id.* (emphasis in original). At the third step, the court must consider "whether the claims and parties involved in the suit are subject to the forum selection clause." *Id.*

If those three steps support the enforceability of the forum selection clause, the clause becomes presumptively enforceable. *Id.* That presumption may be overcome at the fourth step if the party seeking to avoid the clause makes "a sufficiently strong showing that 'enforcement would be unreasonable or unjust, or that the clause was invalid for such reasons as fraud or overreaching.'" *Id.* at 383–84 (quoting *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972)). A strong showing is necessary to overcome the presumption of enforceability. *Nat'l Waste Assocs., LLC v. Ghai Mgmt. Servs., Inc.*, No. 3:20-cv-485 (VLB), 2021 WL 1178284, at *3 (D. Conn. Mar. 29, 2021).

The "overriding framework" of the four-step test is governed by federal law, but the particular steps requiring interpretation of the forum selection clause—step two, regarding the mandatory or permissive nature of the clause, and step three, regarding the scope of the clause—are governed by the state law contractually selected by the parties. *Martinez*, 740 F.3d at 217–18.

## 2. *Relevant Factual Background*

Kaman maintains that all the transactions at issue, and all its sales of K-MAX helicopter parts generally, are governed by the 2021 K-MAX Commercial Price Catalog (the "Price Catalog"). ECF No. 1-1. The Price Catalog sets forth information such the process for ordering parts, methods of payment, prices, and, relevant here, Kaman's "Standard Terms and Conditions of Sale for K-MAX Products and Services" (the "Terms and Conditions"). *Id.* at 3, 19. The Terms and Conditions set forth purchase terms such as the timeline of payment and default, the risk of loss, the return policy, and procedures for terminating an order. *See generally id.* at 19–27.

Relevant here, the Terms and Conditions contain a "Governing Law" clause, which provides: "This Agreement shall be governed by the laws of the State of Connecticut, exclusive of its choice of law rules, and the parties hereby submit to the exclusive jurisdiction of the courts of that state." *Id.* at 26.

There are six relevant purchase orders, all of which were originally drafted by Central Copters. *See* Perreault Decl. ¶ 19; Duffy Decl. ¶ 19. Central Copters submitted the first purchase order on March 19, 2021, although the order was later edited and re-signed on June 22, 2021. Ex. E to Perreault Decl., ECF No. 20-2 at 38. This purchase order does not refer to Kaman's Terms and Conditions or the Price Catalog. *See id.* After the order was originally submitted, Kaman sent a letter containing a quoted price for the requested part, dated June 4, 2021, and the quoted price is reflected in the handwritten edits to the purchase order. *See id.*; ECF No. 20-4 at 2–3. The letter states that Kaman's proposal was "subject to the Terms and Conditions of Sale for K-MAX products and services contained in [the] 2021 K-MAX Catalog." ECF No. 20-4 at 2.

Central Copters submitted the second purchase order on April 7, 2021. Ex. D to Perreault Decl., ECF No. 20-2 at 36.[2] This time, the "Notes and Instructions" section of the purchase order states that the purchase order was "subject to Terms and Conditions of Sale for K-MAX products and services contained in [the] 2021 K-MAX Catalog." Central Copters then submitted additional purchase orders on July 16, 20, 26, and 27, 2021, all of which contained the same statement in the "Notes and Instructions" section referencing Kaman's Terms and Conditions of Sale contained in the 2021 K-MAX Catalog. Exs. F–I to Perreault Decl., ECF No. 20-2 at 40–46.

---

[2] This purchase order bears a date of "1/0/1900." At oral argument, counsel for Kaman explained its system for dating purchase orders and clarified that this purchase order was actually dated April 7, 2021. Tr. of Oral Arg. at 37:13–16. Central Copters did not dispute that assertion.

Central Copters' Office Manager attests that purchase orders prior to March of 2021 did not contain any reference to the Terms and Conditions or the Price Catalog. Muzquiz Decl., ECF No. 29-1, ¶¶ 3–4. She further attests that she began including language referring to the Terms and Conditions and the Price Catalog around March of 2021, after Kaman instructed Central Copters to do so. *Id.* ¶ 5–6; Ex. 2 to Muzquiz Decl., ECF No. 29-3 at 6.

### 3. Discussion

The Court concludes that the forum selection clause in Kaman's Terms and Conditions is presumptively enforceable, and that Central Copters has not overcome that presumption by showing overreaching by Kaman. Central Copters has therefore consented to personal jurisdiction in the state of Connecticut by virtue of the enforceable forum selection clause. Accordingly, Kaman has made a *prima facie* showing that the Court has personal jurisdiction over Central Copters.

First, the Court considers whether the forum selection clause was reasonably communicated to Central Copters, the party resisting enforcement. This requirement is generally satisfied when the party seeking enforcement—here, Kaman—"had done all it reasonably could to warn" the resisting party that the clause implicated "important matters of contract affecting [the resisting party's] legal rights." *Silvestri v. Italia Societa Per Azioni di Navigazione*, 388 F.2d 11, 17 (2d Cir. 1968). As a preliminary matter, a forum selection clause must be "phrased in clear and unambiguous language" to be considered reasonably communicated. *Great N. Ins. Co. v. BMW of N. Am., LLC*, No. 15-cv-416 (VAB), 2018 WL 1472513, at *5 (D. Conn. Mar. 25, 2018) (quoting *Magi XXI, Inc. v. Stato Delia Citta del Vaticano*, 818 F. Supp. 2d 597, 604–05 (E.D.N.Y. 2011), *aff'd*, 714 F.3d 714 (2d Cir. 2013)). In addition, a forum selection clause is "reasonably communicated" if the physical characteristics of the contract evince the important terms and the

circumstances surrounding the signing of the contract enabled the parties to "become meaningfully informed of the contractual terms at stake." *Ward v. Cross Sound Ferry*, 273 F.3d 520, 523 (2d Cir. 2001) (alteration omitted). *See also United Rentals, Inc. v. Pruett*, 296 F. Supp. 2d 220, 225 (D. Conn. 2003) (same).

Courts in this circuit have "considered the inclusion of a forum selection clause within the main text of a contractual agreement to support a finding that the forum selection clause was reasonably communicated." *Great N. Ins. Co.*, 2018 WL 1472513, at *5 (collecting cases). When the forum selection clause is not included in the actual contract, however, enforcement presents a closer question. In such circumstances, courts generally consider whether the party seeking to enforce a forum selection clause contained in another document made that document available to the other party and sufficiently directed the other party's attention to it.

For example, the Second Circuit has held that a forum selection clause contained in a terms and conditions document was reasonably communicated to a customer where the customer received multiple emails stating that all customers must agree to those terms and advising the customers to access the terms by clicking a hyperlink contained in the emails. *Starkey v. G Adventures, Inc.*, 796 F.3d 193, 197 (2d Cir. 2015). The court reasoned that the emails "sufficed to direct [the customer's] attention to the" terms, which reasonably communicated the forum selection clause contained in the terms. *Id. See also Jones v. Ponant USA LLC*, No. 19 Civ. 3041 (NRB), 2020 WL 2489076, at *5 (S.D.N.Y. May 14, 2020) (finding a forum selection clause reasonably communicated under similar circumstances). In another case, the Second Circuit held that a forum selection clause contained in one party's standard terms document was reasonably communicated to its customer because the terms document was incorporated into the customer's booking confirmation by reference and was available on the party's website. *A.P. Moller-Maersk*

*A/S v. Comercializadora de Calidad S.A.*, 429 F. App'x 25, 28 (2d Cir. 2011) (summary order). *See also Salis v. Am. Export Lines*, 331 F. App'x 811, 813-14 (2d Cir. 2009) (summary order) (holding that a forum selection clause specifically mentioned in the plaintiff's receipt was reasonably communicated to him).

Here, the Court finds that, although the text of the forum selection clause was not contained in the purchase orders themselves, Kaman reasonably communicated the forum selection clause to Central Copters and thus incorporated it into the parties' agreement. Central Copters' Office Manager attests that, while Central Copters was in the process of drafting the purchase orders, Kaman repeatedly instructed Central Copters to include the language subjecting the purchases to its Terms and Conditions and other terms set forth in the Price Catalog. Muzquiz Decl. ¶ 6; Ex. 2 to Muzquiz Decl., ECF No. 29-3 at 6 (email from Kaman stating, "our Contracts Department requires the following T&C statement on Customer P.O.'s when prices are from the 2021 Price Catalog" and requesting that the purchase order be resubmitted with the following language: "This PO is subject to Terms and Conditions of Sale for K-MAX products and services contained in 2021 K-MAX Catalog, including the Conditions of Bid."). As in *Starkey*, these communications repeatedly directed Central Copters' attention to the Price Catalog, which contained the forum selection clause in its Terms and Conditions. Moreover, Kaman contends that the Price Catalog was "available to Kaman customers electronically," a representation Central Copters does not appear to dispute. Perreault Decl. ¶ 13. By repeatedly directing Central Copters' attention to the Terms and Conditions contained in the Price Catalog, and by making the Price Catalog available for Central Copters to view, Kaman reasonably communicated the forum selection clause contained in the Price Catalog to Central Copters.

For its part, Central Copters contends that Kaman did not reasonably communicate the significance of the requested language to Central Copters. Specifically, Central Copters represents that the parties' prior transactions, before the purchases at issue, typically did not refer to the Price Catalog or the Terms and Conditions contained therein, and that Kaman never explained that including such language would amount to consent to personal jurisdiction in Connecticut. Sec. Duffy Decl., ECF No. 29-7, ¶¶ 12, 20. But Central Copters is a business entity that was capable of informing itself, or at least inquiring, about the terms referenced by Kaman's requested language. *Conn. Addiction, Med., LLC v. eLab Sols. Corp.*, No. 3:17-CV-333 (VLB), 2018 WL 379008, at *4 (D. Conn. Jan. 11, 2018) (citing *Ward*, 273 F.3d at 523, and explaining that "[i]t is paramount that sophisticated parties inquire about purportedly ambiguous contractual terms so as to ensure they can achieve a proper meeting of the minds").[3] That Kaman did not specifically explain the legal effect of the added language, and that Central Copters did not ask about the meaning of the added language before including it in the purchase orders, does not mean that the forum selection clause referenced in the Terms and Conditions was not reasonably communicated to Central Copters. To the contrary, Kaman directed Central Copters' attention to the Terms and Conditions contained in the Price Catalog and, thus, Central Copters became meaningfully informed of the contractual terms that governed its purchase orders. *See Starkey*, 796 F.3d at 197; *Conn. Addiction, Med., LLC*, 2018 WL 379008, at *3.

---

[3] In their briefing and at oral argument, the parties disagreed about whether the present record demonstrates that Central Copters is a "sophisticated" business entity. *See* Tr. of Oral Arg. at 12:9–20; 26:12–20. Without making any finding as to Central Copters' level of sophistication, the Court observes that, given that Central Copters was ordering hundreds of thousands of dollars' worth of parts from Kaman, it had reason to pay careful attention to the terms and conditions of those orders. Additionally, by the time Kaman began instructing Central Copters to include the language referencing the Terms and Conditions and the Price Catalog, Central Copters had been contemplating litigation against Kaman relating to the allegedly defective helicopter parts, giving it added incentive to scrutinize its business dealings with Kaman. *See* Sec. Duffy Decl. ¶ 19.

Central Copters attempts to analogize this case to *FSB USA, Inc. v. American Products Production Co. of Pinellas County, Inc.*, No. 3:08-cv-1758 (JCH), 2009 WL 2762744, at *1–2, 5 (D. Conn. Aug. 24, 2009).  In that case, the court found that a forum selection clause contained in a buyer's standard purchasing terms that were incorporated by referenced in small print on the purchase orders was not reasonably communicated to the manufacturer.  *Id.*  But *FSB* is distinguishable from the present case.  To begin, Kaman represents that, although it did not convey the Price Catalog to Central Copters, it made the Price Catalog electronically available to Central Copters.  Perreault Decl. ¶ 12; *see A.P. Moller-Maersk A/S*, 429 F. App'x at 28 (finding standard terms reasonably communicated where they were available on the party's website).  In *FSB*, by contrast, the manufacturer had to ask the buyer for a copy of the terms, suggesting that the buyer had not made the terms readily available like Kaman did here.  *FSB USA, Inc.*, 2009 WL 2762744, at *4.

In addition, the purchase orders' references to the Price Catalog and Terms and Conditions here are in a font size that appears consistent with the rest of the font on that page and is much bigger than fine print.  *See* Exs. E–I to Perreault Decl.  And the forum selection clause itself, contained within the Terms and Conditions, is in a regular font paragraph titled "GOVERNING LAW," not hidden in a margin or written in fine print.  *See* ECF No. 1-1 at 26 (capitalization in original).  Moreover, here, it was *Central Copters* that added the reference to the Terms and Conditions of the Price Catalog to the purchase orders, and therefore it cannot plausibly argue it was unaware that its own purchase orders contained that language.

Finally, the language included in every relevant purchase order here is not ambiguous.  Rather, the purchase orders clearly state that each one is "*subject to*" the terms contained in identifiable documents, specifically, the "Terms and Conditions of Sale for K-MAX products and

services contained in 2021 K-MAX Catalog." *See* Exs. D–I to Perreault Decl. (emphasis added);

*cf. New Moon Shipping Co. v. MAN B&W Diesel AG*, 121 F.3d 24, 30 (2d Cir. 1997) (finding

reference to terms and conditions "known to you" too ambiguous to permit incorporation by

reference). In sum, the Court finds that Kaman reasonably communicated the forum selection

clause, contained in the Terms and Conditions section of the Price Catalog, to Central Copters

before Central Copters submitted the purchase orders at issue.

The second step to determine the enforceability of the forum selection clause, considering

the permissive or mandatory nature of the clause, is not in dispute here. Tr. of Oral Arg. at 18:13–

15. The clause provides that "the parties hereby submit to the *exclusive* jurisdiction of the court

of" Connecticut, ECF No. 1-1 at 26 (emphasis added), and thus it is clearly mandatory. *See Salis*,

331 F. App'x at 814.

The third step, considering the scope of the forum selection clause and whether the claims

and parties involved in the suit fall within that scope, is also not in dispute here. Tr. of Oral Arg.

at 18:13–15. The complaint states claims for breach of contract and unjust enrichment arising

from Central Copters' alleged nonpayment for helicopter parts manufactured and shipped by

Kaman pursuant to Central Copters' purchase orders. *See generally* Compl. Such claims fall

within the scope of the purchase orders and the Terms and Conditions incorporated by reference

into them.

Because those three steps are satisfied, the parties' forum selection clause is presumptively

enforceable. *Phillips*, 494 F.3d at 383. At the fourth step, to overcome the presumption of

enforceability, Central Copters must make "a sufficiently strong showing that 'enforcement would

be unreasonable or unjust, or that the clause was invalid for such reasons as fraud or

overreaching.'" *Id.* at 383–84 (quoting *M/S Bremen*, 407 U.S. at 15). Specifically, Central Copters

may avoid enforcement of the forum selection clause under one of four conditions: (1) if the incorporation of the clause "was the result of fraud or overreaching;" (2) if "the law to be applied in the selected forum is fundamentally unfair;" (3) if "enforcement contravenes a strong public policy of the forum in which suit is brought;" or (4) if "trial in the selected forum will be so difficult and inconvenient that the [party avoiding enforcement] effectively will be deprived of [its] day in court." *Martinez*, 740 F.3d at 228 (quoting *Phillips*, 494 F.3d at 392). A strong showing is necessary to overcome the presumption of enforceability, *Nat'l Waste Assocs., LLC*, 2021 WL 1178284, at *3, and the four conditions considered at this step are interpreted narrowly, *Donnay USA Ltd. v. Donnay Int'l S.A.*, 705 F. App'x 21, 25 (2d Cir. 2017) (summary order).

Here, Central Copters does not contend that the incorporation of the forum selection clause was the result of fraud, that application of Connecticut law would be fundamentally unfair, that enforcement would contravene any public policy, or that trial in Connecticut would be so inconvenient as to effectively deprive Central Copters of its day in court. Rather, Central Copters contends only that the incorporation of the forum selection clause was the result of overreaching by Kaman. Specifically, Central Copters represents that Kaman began requiring the inclusion of the language referring to the Terms and Conditions contained in the Price Catalog soon after Central Copters sent Kaman a "litigation hold" in connection with Central Copters' anticipated filing of the Montana action. Sec. Duffy Decl. ¶¶ 19–20. In addition, Central Copters' Office Manager attests that her understanding was that Central Copters "had no choice but to include the language in the purchase orders if it needed parts from" Kaman. Muzquiz Decl. ¶ 5. Similarly, Central Copters identifies disproportionate bargaining power inherent in the parties' transactions because it could obtain parts and equipment for the K-Max helicopter only from Kaman, and not from any other seller. Sec. Duffy Decl. ¶ 11.

The Court concludes that Central Copters has not demonstrated that the incorporation of the forum selection clause was the result of such obvious overreaching by Kaman as to overcome the presumption of enforceability.  Cases involving merely disproportionate bargaining power or an inability to freely negotiate contract terms generally do not demonstrate such egregious overreaching as to find forum selection clauses unenforceable.  For example, one court in this District rejected an employee's argument that her inherently "subordinate bargaining position" relative to her employer rendered the forum selection clause in her employment agreement unenforceable, noting the absence of any coercion.  *Juliano v. Cecil Saydah Co.*, No. 3:04-cv-1091 (DJS), 2005 WL 475436, at *2 (D. Conn. Feb. 28, 2005).  In another case in this Circuit, the district court rejected a plaintiff's argument that its "financial vulnerability" allowed the defendant to overreach.  *Jalee Consulting Grp. v. XenoOne, Inc.*, 908 F. Supp. 2d 387, 395–96 (S.D.N.Y. 2012).  In addition, forum selection clauses contained in contracts of adhesion are not necessarily unenforceable on that basis alone.  *Doctor's Assocs., Inc. v. Pahwa*, No. 3:16-CV-446 (JCH), 2016 WL 7635748, at *11 (D. Conn. Nov. 3, 2016) ("To the extent that defendants argue that the forum selection clause is unenforceable merely because it is contained in an alleged contract of adhesion, courts have routinely rejected such an argument."); *Vertucci v. Orvis*, No. 3:05-CV-1307 (PCD), 2006 WL 1688078, at *7 (D. Conn. May 30, 2006) (explaining that courts have "not hesitated to enforce forum selection clauses, even in contracts of adhesion"); *Onward Search LLC v. Noble*, No. 3:22-CV-369 (VAB), 2022 WL 2669520, at *11 (D. Conn. July 11, 2022) (same). Accordingly, even if the Court accepts Central Copters' representations that it had little bargaining

power to refuse the forum selection clause, such disproportionate bargaining power does not amount to overreaching sufficient to render the forum selection clause unenforceable.[4]

In sum, Kaman has made a *prima facie* showing that the forum selection clause incorporated into the parties' transactions is enforceable for the purpose of consenting to personal jurisdiction in this District.  Specifically, the Court is satisfied with Kaman's preliminary showing that Kaman reasonably communicated the forum selection clause, and Central Copters has not demonstrated such overreaching by Kaman as to overcome the presumption of enforceability at this stage.  Because Kaman has made a *prima facie* showing that the forum selection clause constitutes enforceable consent to personal jurisdiction in this District, *Gottdiener*, 462 F.3d at 103, the Court does not reach Central Copters' other arguments concerning personal jurisdiction, and Central Copters' motion to dismiss for lack of personal jurisdiction is denied.  *See Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Wynn Las Vegas, LLC*, 509 F. Supp. 3d 38, 48 (S.D.N.Y. 2020) (noting that where an agreement contains a valid and enforceable forum selection clause, it is not necessary to analyze jurisdiction under a state long-arm statute or federal constitutional requirements of due process).

---

[4] The Montana court's decision rejecting Kaman's attempt to enforce the parties' forum selection clause in that action does not dictate the Court's holding here.  First, the forum selection clauses Kaman sought to enforce in the Montana action did not apply to Kaman's sale of the helicopter or blades that are alleged in that action to have been defective. *Duffy*, 590 F. Supp. 3d at 1328.  In addition, the forum selection clause did not bind the estate of the deceased pilot because he was not a party to the agreement in which it appeared, and the estate's wrongful death action did not fall within the scope of Kaman's Price Catalogs.  *Id.*  Finally, this Court need not adhere follow the Montana court's refusal to enforce the parties' forum selection clause on the ground that it was a contract of adhesion.  *See id.* at 1328–29.  To begin, the Montana court did not mention certain facts that are crucial to the present motion—specifically, the parties' communications prior to each transaction that reasonably alerted Central Copters to Kaman's Terms and Conditions.  Also, importantly, the Montana court considered the enforceability of the forum selection clause under Montana law, *see id.*, but this Court is bound to apply federal law from this Circuit, *see Martinez*, 740 F.3d at 217–18, which appears to differ from Montana law on the question of whether a forum selection clause contained in a contract of adhesion is necessarily unenforceable.

## IV.    VENUE

Central Copters also moves to dismiss this action for improper venue pursuant to Federal Rule of Civil Procedure 12(b)(3).  In the alternative, Central Copters also seeks transfer of this case to the U.S. District Court for the District of Montana under 28 U.S.C. § 1404(a).  For the following reasons, the Court finds that Kaman has made a *prima facie* case that venue is proper in this District, and the Court declines to transfer this action to the District of Montana.[5]

### A.   Propriety of Venue

Federal Rule of Civil Procedure 12(b)(3) allows a party to move for dismissal based on improper venue.  The plaintiff has the burden of showing that venue is proper; in the procedural posture applicable here, Kaman need only make a *prima facie* showing of venue.  *Gulf Ins. Co. v. Glasbrenner*, 417 F.3d 353, 355 (2d Cir. 2005) (quoting *CutCo Indus.*, 806 F.3d at 364–65); *MacCallum v. N.Y. Yankees P'ship*, 392 F. Supp. 2d 259, 262 (D. Conn. 2005).

The question of whether venue is improper is governed by 28 U.S.C. § 1391.  *Atl. Marine Constr. Co.*, 571 U.S. at 55.  Relevant here, § 1391(b) provides that venue is proper in: (1) "a

---

[5] As an initial matter, it is unclear whether the Court needs to address venue at all.  Courts in this Circuit have held that an enforceable forum selection clause constitutes consent to both personal jurisdiction and venue in the relevant district.  *E.g.*, *Doctor's Assocs., Inc. v. Stuart*, 85 F.3d 975, 983 (2d Cir. 1996); *United Rentals, Inc.*, 296 F. Supp. 2d at 224.  Those cases, however, predate the U.S. Supreme Court's decision in *Atlantic Marine Construction Co. v. United States District Court for the Western District of Texas*, 571 U.S. 49, 56 (2013), which explained that "[w]hether the parties entered into a contract containing a forum-selection clause has no bearing on whether" venue is proper in the district it was brought.  In *Atlantic Marine*, the plaintiff initiated the action in the Western District of Texas, and the defendant sought to dismiss the action on the ground that the parties' forum selection clause pointing to the Eastern District of Virginia necessarily rendered venue in Texas improper under Rule 12(b)(3).  *Id.* at 53–54.  The Supreme Court held that the question of whether venue was proper depended not on the forum selection clause, but, rather, on whether the case satisfied the provisions of § 1391.  *Id.* at 55.  *Atlantic Marine*'s holding applies most squarely to situations where the case is brought in a venue *other* than that specified in the forum selection clause; in those cases, the clause can be enforced through a motion to transfer under § 1404(a).  571 U.S. at 59.  Here, however, the parties agreed to litigate this dispute in Connecticut, the district where this action is currently pending.  Thus, it is does not necessarily follow from *Atlantic Marine* that the parties' choice of a Connecticut venue is irrelevant to the propriety of venue here.  *See Nymbus, Inc. v. Sharp*, No. 3:17-cv-1113 (JAM), 2018 WL 705003, at *6 (Feb. 5, 2018) (finding *Atlantic Marine* inapplicable in case involving a "defendant's challenge to plaintiff's choice to honor the parties' agreement by filing in a contractually pre-selected forum").  Nevertheless, because the parties agree that the forum selection clause does not dispose of the propriety of venue, the Court will address the issue here.  *See* Tr. of Oral Arg. at 5:24–6:9, 33:17–22.

judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located"; (2) "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred"; or (3) if there is no district in which the action may be brought, any district in which the court has personal jurisdiction over any defendant.  28 U.S.C. § 1391(b)(1)–(3).

Although not addressed in the parties' briefing, the Court observes that venue in this District is proper under § 1391(b)(1) in light of the Court's conclusion above that the parties' forum selection clause constitutes Central Copters' consent to personal jurisdiction in this District.  For the purpose of venue, a corporate defendant is deemed to "reside" in "any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question."  28 U.S.C. § 1391(c)(2).  Because the Court has personal jurisdiction over Central Copters by way of the parties' forum selection clause, Central Copters is deemed to reside in this District for the purpose of venue.  *See MacCallum*, 392 F. Supp. 2d at 262, 267; *NovaFund Advisors, LLC v. Capitala Grp., LLC*, No. 3:18-CV-1023 (MPS), 2019 WL 1173019, at *11 n.9 (D. Conn. Mar. 13, 2019).  Given that the only Defendant in this action resides in this District, venue is proper in this District under § 1391(b)(1) and (c).

The parties primarily dispute whether venue is proper in this District under § 1391(b)(2), specifically, whether a substantial part of the events giving rise to Kaman's claim occurred in Connecticut.  For the following reasons, the Court finds that, even if venue were not proper in this District under § 1391(b)(1), Kaman has demonstrated a *prima facie* case that venue is proper in this District under § 1391(b)(2).

Although § 1391(b)(2) "does not restrict venue to the district in which the 'most substantial' events or omissions giving rise to a claim occurred," *Daniel v. Am. Bd. of Emergency*

*Med.*, 428 F.3d 408, 432 (2d Cir. 2005), the court must "take seriously the adjective 'substantial,'" *Gulf Ins. Co.*, 417 F.3d at 357.  "'Substantiality' for venue purposes is more a qualitative than a quantitative inquiry, determined by assessing the overall nature of the plaintiff's claims and the nature of the specific events or omissions in the forum, and not by simply adding up the number of contacts." *Daniel*, 428 F.3d at 432–33 (citing *Gulf Ins. Co.*, 417 F.3d at 357).  "When material acts or omissions within the forum bear a close nexus to the claims, they are properly deemed 'significant' and, thus, substantial, but when a close nexus is lacking, so too is the substantiality necessary to support venue." *Id.* at 433.

Therefore, when a plaintiff relies on § 1391(b)(2) to defeat a venue challenge, the court should: (1) "identify the nature of the claims and the acts or omissions that the plaintiff alleges give rise to those claims"; and (2) "determine whether a substantial part of those acts or omissions occurred in the district where suit was filed, that is, whether 'significant events or omissions material to those claims have occurred in the district in question.'" *Id.* at 432 (cleaned up) (quoting *Gulf Ins. Co.*, 417 F.3d at 357).  "Courts making venue determinations in contract disputes have looked to such factors as where the contract was negotiated or executed, where it was to be performed, and where the alleged breach occurred." *Gulf Ins. Co.*, 417 F.3d at 357 (citations and internal quotation marks omitted).

Here, Kaman has identified events that demonstrate a *prima facie* case of proper venue in the District of Connecticut under § 1391(b)(2).  To begin, Kaman points to the purchase orders, which were drafted by Central Copters in Montana and sent to Kaman's Connecticut office.  *See* Exs. D–I to Perreault Decl., ECF No. 20-2 at 36–46; Perreault Decl. ¶ 19.  In addition, Central Copters' President represents that the negotiations for the parties' transactions typically began with conversations with Kaman employees, whom Central Copters could infer were operating in

Connecticut due to the parties' long course of dealing, and documentation between the parties containing Kaman's Connecticut mailing address and phone number.  Sec. Duffy Decl. ¶¶ 13, 16; ECF No. 20-4.  Thus, Central Copters' various communications to Kaman's Connecticut office, especially those concerning the transactions at issue, are significant events for the purpose of the Court's venue analysis under § 1391(b)(2).  *See Sacody Techs., Inc. v. Avant, Inc.*, 862 F. Supp. 1152, 1157 (S.D.N.Y. Sept. 14, 1994) (explaining that venue may be proper due to communications "transmitted to or from the district in which the cause of action was filed," particularly when there is "a sufficient relationship between the communication and the cause of action"); *Schomann Int'l Corp. v. N. Wireless, Ltd.*, 35 F. Supp. 2d 205, 213 (N.D.N.Y. 1999) (finding venue proper based on "regular communication" and negotiations between one party in the forum state and another party elsewhere); *Distributorsoutlet.com, LLC v. Glasstree, Inc.*, No. 11-CV-6079 (PKC)(SLT), 2016 WL 3248310, at *2 (E.D.N.Y. June 10, 2016) (finding venue proper "based on the telephone discussions and negotiations between [the plaintiff] and [the defendants] leading up to the execution of the contracts in question").  *See also U.S. Titan, Inc. v. Guangzhou Zhen Hua Shipping Co.*, 241 F.3d 135, 153–53 (2d Cir. 2001) (considering a substantially identical venue statute and reasoning that contract negotiations involving the forum state and the defendant's communications "directed" to the forum state rendered venue in the forum state proper).

In addition, although the record does not reveal where the relevant helicopter parts were manufactured, Kaman has shown that it at least partially performed its obligations under the parties' contracts from Connecticut by gathering the relevant helicopter parts and shipping them from Connecticut.  Specifically, Kaman's Terms and Conditions state that, unless otherwise indicated, "all orders will be shipped FOB from Bloomfield, Connecticut."  ECF No. 1-1 at 19.

Under Connecticut law, "F.O.B.," the abbreviation for "free on board," is a defined term referring to the place of shipment, meaning that the seller bears the "expense and risk" of putting the goods into the possession of the shipping carrier, but no further.  Conn. Gen. Stat. § 42a-2-319(1); *see also Berisford Metals Corp. v. S/S Salvador*, 779 F.2d 841, 842 n.2 (2d Cir. 1985) (similarly defining F.O.B. and citing *Williston on Contracts*).  Courts outside of this Circuit have found that term important to the propriety of venue.  *See Bostik, Inc. v. Top Indus., Inc.*, No. 1:12-CV-436 (MHS), 2012 WL 12957099, at *2 (N.D. Ga. Aug. 6, 2012); *Nordyne, Inc. v. Flick Distrib., LLC*, No. 4:09-CV-0055 (TCM), 2009 WL 1508778, at *3 (E.D. Mo. May 28, 2009).  Moreover, within this District, a contractual party's place of performance is deemed significant for the purpose of analyzing venue.  *See Indymac Mortg. Holdings, Inc. v. Reyad*, 167 F. Supp. 2d 222, 238 (D. Conn. Aug. 10, 2001); *NovaFund Advisors, LLC*, 2019 WL 1173019, at *12.  Although Central Copters' alleged failure to pay Kaman for the parts at issue occurred in Montana, that does not negate the action's substantial connection to Connecticut.

In moving to dismiss for improper venue, Central Copters does not meaningfully explain why venue in this District is improper; instead, it contends that the most significant events giving rise to Kaman's claim occurred in Montana.  *See* ECF No. 16-1 at 16; ECF No. 29 at 9.  But this Court need not decide where "the *most* substantial events" giving rise to Kaman's claim occurred because § 1391 "permits venue in multiple judicial districts as long as *a substantial* part of the underlying events took place in those districts."  *Daniel*, 428 F.3d at 432 (emphasis added) (internal quotation marks omitted; quoting *Gulf Ins. Co.*, 417 F.3d at 356).  *See also NovaFund Advisors, LLC*, 2019 WL 1173019, at *12 (explaining that the substantiality requirement does not require "that *all* material events must occur" in the forum district (emphasis in original)).  In other words, "venue can be proper in more than one district, and the court is not required to determine the best

venue." *Marcus v. Am. Contract Bridge League*, 562 F. Supp. 2d 360, 363 (D. Conn. June 20, 2008).

Here, the Court need not decide whether the District of Montana would be the best venue or whether all the material events occurred in the District of Connecticut; rather, it is sufficient for venue to be proper in the District of Connecticut because a substantial part of the events giving rise to Kaman's breach of contract claim occurred in Connecticut.   28 U.S.C. § 1391(b)(2). Specifically, the Court finds that Kaman has shown a *prima facie* case that venue is proper in this District, due to the parties' communications and negotiations between Montana and Connecticut and Kaman's partial performance from Connecticut.   Thus, because venue is proper under either §§ 1391(b)(1) or (b)(2), Central Copters' motion to dismiss for improper venue must be denied.

### B.   Transfer Under Section 1404(a)

The Court also declines to transfer this action to the District of Montana pursuant to 28 U.S.C. § 1404(a).[6]   That statute provides, in relevant part: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."   *Id.*   Typically, a court considering a motion to transfer under § 1404(a) "must evaluate both the convenience of the parties and various public-interest considerations" to decide "whether, on balance, a transfer would serve 'the convenience of parties and witnesses' and other promote 'the interest of justice.'"   *Atl. Marine Constr. Co.*, 571 U.S. at 62–63 (quoting 28 U.S.C. § 1404(a)).   *See also Fasano v. Li*, 47 F.4th 91, 100 (2d Cir. 2022).

---

[6] In its brief, Central Copters suggested that the action should be transferred to the District of Montana because Kaman's breach of contract claims are "intertwined" with the issues pending in the Montana action and thus should have been brought in that action as compulsory counterclaims. *See* ECF No. 16-1 at 19.   When questioned at oral argument, Central Copters clarified that it did not intend to raise any such argument explicitly, Tr. of Oral Arg. at 16:7–9, so the Court will not address it further.

"The calculus changes, however, when the parties' contract contains a valid forum-selection clause, which 'represents the parties' agreement as to the most proper forum.'" *Atl. Marine Constr. Co.*, 571 U.S. at 63 (quoting *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 31 (1988)).   In particular, when the parties' contract contains a forum selection clause, a court considering a § 1404(a) motion "should not consider arguments about the parties' private interests" because the forum selection clause amounts to a waiver of the right to challenge the preselected forum on such grounds.   *Id.* at 64.   While the court may consider the public interest factors, those factors will "rarely" outweigh the controlling effect that usually flows from the parties' forum selection clause.   *Id.* at 64.   The party "acting in violation of the forum-selection clause" bears "the burden of showing that public-interest factors overwhelmingly disfavor" the parties' preselected forum.   *Id.* at 67.

Here, because the Court has found the parties' forum selection clause enforceable, the Court will not address Central Copters' arguments about its private interests, such as the inconvenience and expense it will suffer by defending this action in Connecticut.   Instead, the Court will consider only the public interest factors, which include: "the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; and the interest in having the trial of a diversity case in a forum that is at home with the law."   *Id.* at 62 n.6 (quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1981) (alteration and internal quotation marks omitted)).   *See also Fasano*, 47 F.4th at 100 (restating the public interest factors); *Nat'l Waste Assocs., LLC*, 2021 WL 1178284, at *7 (considering only the public interest factors, in light of the parties' forum selection agreement).

The Court recognizes that there may be a slight degree of administrative ease in adjudicating the present action along with the Montana action, to the extent the actions contain

some overlapping subject matter; but Central Copters has not demonstrated any significant administrative burden on the federal judiciary to adjudicate the two actions in separate fora. Indeed, at this early stage of the case, it is not apparent that there will be much overlapping subject matter, given that the Montana action appears to concern different helicopter parts than the ones at issue here.  In addition, Connecticut has an interest in resolving Kaman's contract claims, which appear to be governed by Connecticut law, in a local forum that is familiar with the law.  On the whole, this is not an "unusual" case where the public interest factors counsel in favor of flouting the parties' forum selection clause.  *See Atl. Marine Constr. Co.*, 571 U.S. at 64.  Thus, in light of the parties' forum selection clause and the absence of any meaningful public interest in transferring this action to the District of Montana, the Court denies Central Copters' request to transfer.

## V.       CONCLUSION

For the reasons described above, Central Copters' motion to dismiss or transfer venue, ECF No. 16, is DENIED.  Central Copters shall file an answer to the complaint by **September 11, 2023**.

**SO ORDERED** at Hartford, Connecticut, this 28th day of August, 2023.

 */s/ Sarala V. Nagala*
SARALA V. NAGALA
UNITED STATES DISTRICT JUDGE